**McMANIMON, SCOTLAND
& BAUMANN, LLC**
427 Riverview Plaza
Trenton, New Jersey 08611
(609) 695-6070
Andrea Dobin
Michele M. Dudas
*Attorneys for Plaintiff, Andrea Dobin, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL MANAGEMENT AND PRESERVATION SERVICES LLC, d/b/a NATIONAL FIELD NETWORK,<br><br>　　　　　Debtor. | Case No. 18-16859 (CMG)<br><br>Honorable Christine M. Gravelle<br><br>Chapter 7 |
| ANDREA DOBIN, CHAPTER 7 TRUSTEE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SHARI NOTT, JACK JAFFA, and CHRISTOPHER CRANDELL,<br><br>　　　　　Defendants, | Adv. Pro. No. 20-____ (CMG) |

**COMPLAINT TO RECOVER PROPERTY OF THE ESTATE, FOR
<u>AVOIDANCE OF FRAUDULENT TRANSFERS AND RELATED RELIEF</u>**

Andrea Dobin, Chapter 7 Trustee ("Plaintiff" or "Trustee") for National Management and Preservation Services, LLC, d/b/a National Field Network, Chapter 7 debtor ("Debtor"), by and through her counsel, McManimon, Scotland & Baumann, LLC, by way of Complaint against Shari

Nott ("Nott"), Jack Jaffa ("Jaffa") and Christopher Crandell ("Crandell") (where appropriate, collectively the "Defendants") respectfully avers as follows:

## PARTIES

1. The Debtor was in the business of providing default services, including property preservation services, to banks and other institutions.

2. Upon information and belief, Jack Jaffa ("Jaffa") is the one-hundred (100%) percent owner of the Debtor.

3. In or about 2009, Jaffa, along with Sam Stern, recruited Shari Nott ("Nott") to operate the Debtor's business from its inception.

4. Upon information and belief, Defendant Nott is an individual residing at 100 Oak Terrace, Freehold, New Jersey 07728, and may be served at that address.

5. Upon information and belief, Jaffa is an individual residing at 147 Prince Street, Brooklyn, New York 11201, and may be served at that address.

6. Upon information and belief, Crandell is an individual residing at 429 Fox Hollow Drive, Feasterville Trevose, Pennsylvania 19053, and may be served at that address.

7. The Debtor was formed as a Delaware limited liability company on May 22, 2009. Its Certificate of Registration as a foreign corporation was filed with the State of New Jersey on October 19, 2009.

8. At the inception of the Debtor's business, Nott was responsible for operations of the Debtor, and eventually became its Chief Executive Officer.

9. Nott had prior experience in default services, *i.e.*, services provided to lenders faced with defaulting mortgagees. Nott was given complete control of the Debtor's business and was responsible for all major decisions. Nott's job duties included operations, client services, business development and information technology.

10. In or about 2010, Crandell was hired as the Debtor's Chief Operating Officer.

11. Upon information and belief, Crandell's annual salary was approximately $288,000, with additional benefits.

12. In February 2011, National Field Network Now, LLC d/b/a All the Right Movers ("NFN Now") was formed. At the time of its formation, Nott, Jaffa and Crandell were the members of NFN Now.

13. Upon information and belief, NFN Now provided property preservation services and was formed with an original intent to franchise the business.

14. Upon information and belief, the Debtor provided NFN Now with the start-up funds to commence operations.

15. NFN Now shared office space with the Debtor.

16. Upon information and belief, at its height, the Debtor had approximately two-hundred (200) employees.

17. In or about 2011, Nott secured Reverse Mortgage Solutions ("RMS") as a client of the Debtor.

18. On August 22, 2011, NFN Investments MI, LLC ("Investments") was formed in the State of Michigan as a limited liability company. Upon information and belief, at the time of its formation, Nott, Jaffa and Crandell were the members of Investments.

19. Upon information and belief, RMS requested that the Debtor and/or Nott purchase a portfolio of approximately thirty (30) properties in Michigan, which was the purpose for Investments being formed.

20. In or about May 2013, NFN Claims ("Claims") was formed. At the time of its formation, Nott, Jaffa and Crandell were the members of Claims.

21. Upon information and belief, Claims was formed to file and process mortgage insurance claims. Claims stopped operating when the Debtor stopped operating.

22. Upon information and belief, Crandell formed All the Right Movers, LLC as a Delaware corporation headquartered in Pennsylvania ("ATRM DE/PA").

23. In or about 2014, Fannie Mae became a client of the Debtor, and the Debtor provided property preservation and accounts payable services to Fannie Mae.

24. In or about November 2015, Trio Solutions, LLC ("Trio") was formed. At the time of its formation, Nott, Jaffa and Crandell were the members of Trio.

25. Upon information and belief, Trio was an entity to be used to address non-payment of homeowners association dues for the institutions which used the Debtor's services in the default services business.

26. Upon information and belief, in or about 2015, the Debtor began experiencing financial difficulties as a result of delayed payment from Fannie Mae, large receivables from RMS, and other financial obligations of the Debtor, including tax payments.

27. In or about March 2017, Commigrate Capital, LLC ("Commigrate") was formed. At the time of its formation, Nott, Jaffa and Crandell were the members of Commigrate.

28. Upon information and belief, Commigrate was an entity to be used to outsource customer service of the Debtor.

29. In or about July 2017, Chik-Chak Shack, LLC ("Chik-Chak") was formed. At the time of its formation, Nott, Jaffa and Crandell were the members of Chik-Chak.

30. Upon information and belief, Chik-Chak was a second hand store which sold all of the abandoned furniture that came into the possession of NFN Now during the cleanouts of vacant properties.

31. Nott also formed an entity, Plan A ("Plan") to provide an operating system to the Debtor. Nott was the sole owner of Plan.

32. Upon information and belief, in or about January 2017, the Debtor laid off more than twenty-five (25%) percent of its workforce.

33. Upon information and belief, in or about November 2017, the Debtor did a second major layoff, leaving approximately thirty (30) employees operating the business.

34. Upon information and belief, Crandell was terminated for work-performance related issues in early 2018.

35. In February 2018, All the Right Movers Unlimited, LLC was formed. Jonathan Oglensky ("Oglensky"), Nott's husband, is the registered agent.

36. On April 6, 2018 (the "Petition Date"), an involuntary Chapter 7 petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) in the United States Bankruptcy Court for the District of New Jersey.

37. On or about April 20, 2018, the Debtor, Nott, Crandell, Oglensky, NFN Now, Investments, ATRM DEPA, Trio and Commigrate entered into a "Mutual Release and Transfer Agreement," ("Post-Petition Agreement") which provided that Nott, Oglensky, NFN Now, Investments and Commigrate would pay $60,000 in exchange for the transfer of Crandell's interests in ATRM DE/PA, Investments and Commigrate to Nott, and his interests in NFN Now to Oglensky. The Post-Petition Agreement contains a release by all of the parties, including the Debtor.

5

38. The Debtor did not seek Bankruptcy Court approval of the Post-Petition Agreement. The Post-Petition Agreement is not binding on the Debtor or the Trustee.

39. The Post-Petition Agreement is signed by Nott on behalf of the Debtor.

40. Upon information and belief, as of the Petition Date, Nott's salary was $350,000 per year, plus other benefits.

41. On April 23, 2018, the Debtor filed a Motion to convert the Chapter 7 case to Chapter 11 (Docket No. 13), which was granted by Order entered April 25, 2018 (Docket No. 15).

42. On May 15, 2018, the Debtor filed its Schedules and Statement of Financial Affairs (Docket No. 27).

43. The Schedules are signed by Nott as Chief Executive Officer of the Debtor.

44. On the Statement of Financial Affairs, Question 30, the Debtor disclosed payments to Nott in the total amount of $1,088,517.55, with a description of: "additional compensation above base pay from 2016 through April 2018, incorrectly classified as a loan due to the Debtor on the Debtor's books and records. Should have been classified as an advance against income. The total gross amount paid during the 1 year prior to the filing is $1,088,517.55, but the net amount after repayments totaled $801,727.60."

45. According to a report produced by Nott dated May 8, 2018 relating to "employee loans" for Nott, total loans made by the Debtor to Nott from in or about 2011 through April 18, 2018 were approximately $6,039,586.10, for which there is a total balance due from Nott to the Debtor in the amount of $1,480,445.21 ("Nott Loan").

46. The Nott Loan is comprised of various personal expenses, *e.g.*, funds in excess of $500,000 made available to Nott to purchase a residence in Long Branch, New Jersey, to funds advanced related to vacation homes in the Bahamas, luxury vehicles, including a Thunderbird,

multiple Audi vehicles, a specialty Tesla vehicle and a Ford Explorer, to payment of contractors who did personal work for Nott at her various residences and/or other business ventures.

47. On or about July 20, 2018, a Creditors Committee was formed (Docket No. 64).

48. On January 28, 2019, the Office of the United States Trustee filed a Motion to convert the Chapter 11 case to Chapter 7 (Docket No. 109), which was granted by Order entered April 2, 2019 (Docket No. 137).

49. According to the last-filed Monthly Operating Report by the Debtor for the period ending January 31, 2019 (Docket No. 129), the following loans were outstanding from entities owned by the Defendants:

| Company | Outstanding Loan |
| --- | --- |
| Plan A | $5,000.00 |
| Chik-Chak | $12,111.98 |
| Investments | $581,409.07 |
| NFN Now | $1,070,522.49 |

(collectively, the "Insider Company Receivables").

50. On April 3, 2019, Bunce D. Atkinson, Esq. ("Original Trustee") was appointed to serve as the Chapter 7 Trustee (Docket Nos. 138 and 139).

51. On July 20, 2020, Plaintiff was appointed as the successor Chapter 7 Trustee to the Original Trustee (Docket Nos. 178 and 179).

52. By Order entered September 29, 2020, the statute of limitations for the Trustee to commence actions pursuant to 11 U.S.C. §§ 546 and 549 was extended through December 31, 2020 (Docket No. 192).

53. According to information obtained from the Debtor's books and records and through the Trustee's investigation into the Debtor's financial affairs, the Debtor was insolvent from at least December 31, 2015.

4810-4031-1253, v. 1

**Avoidance Claims Against Nott**

54. In addition to the monies due from Nott for Insider Company Receivables and the Nott Loan, according to the Debtor's books and records and Schedules, the following payments and salary were made to Nott in the time frames set forth below:

| Time Period from Filing Date | Amount |
|---|---|
| 2 Years ("Nott 548 Payments") | $1,366.526.84 |
| January 1, 2016 through Petition Date ("Nott 544 Payments") | $1,417,526.84 |

collectively, the "Nott Transfers."[1]

**Avoidance Claims Against Jaffa**

55. According to the Debtor's books and records, the following payments were made to Jaffa in the time frames set forth below:

| Time Period from Filing Date | Amount |
|---|---|
| 2 Years ("Jaffa 548 Payments") | $825,000.00 |
| January 1, 2016 through Petition Date ("Jaffa 544 Payments") | $1,025,000.00 |

collectively, the "Jaffa Transfers."[2]

**Avoidance Claims Against Crandell**

56. According to the Debtor's books and records, the following payments were made to Crandell in the time frames set forth below:

| Time Period from Filing Date | Amount |
|---|---|
| 2 Years ("Crandell 548 Payments") | $528,846.23 |
| January 1, 2016 through Petition Date ("Crandell 544 Payments") | $820,240.86 |

collectively, the "Crandell Transfers."

---

[1] The Nott Transfers do not include any payments made by the Debtor to third parties for any personal expenses or obligations of Nott.

[2] The Jaffa Transfers do not include payments made by the Debtor to third parties for any personal expenses or obligations of Jaffa. Said amounts do not include any payments made by NFN Now to Jaffa.

4810-4031-1253, v. 1

57. Additionally, the Debtor made the following transfers to NFN Now in the time frames set forth below:

| Time Period from Filing Date | Amount |
|---|---|
| 90 Days | $401,500 |
| 1 Year | $934,734.92 |
| 2 Years | $1,074,234.92 |
| January 1, 2016 through Petition Date | $1,074,234.92 |

collectively, the "NFN Now Transfers."

## JURISDICTION AND VENUE

58. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

59. This is a core proceeding brought pursuant to Fed. R. Bankr. P. 7001, 11 U.S.C. §§ 541, 542, 544, 548 and 550, and 28 U.S.C. § 157(b)(2)(A), (B), (H), and/or (O).

60. Venue in this matter is properly before this Court by virtue of 28 U.S.C. § 1409(a).

## COUNT ONE
### (Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542)
### (as to Nott)

61. The Trustee repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth at length herein.

62. The Nott Loan constitutes property of the bankruptcy Estate pursuant to 11 U.S.C. § 541.

63. The receivables owed to the Debtor by Nott must be turned over to the Plaintiff pursuant to 11 U.S.C. § 542.

**WHEREFORE**, the Plaintiff demands judgment against Nott as follows:

9

    a. awarding the Plaintiff judgment in the amount of Nott Loan in the amount of $1,480,445.21;

    b. awarding attorneys' fees and costs; and

    c. granting such other and further relief as is just and appropriate.

## COUNT TWO
### (Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548)
### (as to Jaffa)

64. The Trustee repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth at length herein.

65. The Debtor made the Jaffa 548 Transfers to Jaffa within the two (2) years preceding the Petition Date in the total amount of approximately $825,000.00.

66. Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Jaffa 548 Transfers.

67. Jaffa was not employed by the Debtor or entitled to salary or other compensation for services rendered.

68. Upon information and belief, the Debtor was insolvent on the dates the Jaffa 548 Transfers were made to Jaffa or became insolvent as a result of the Jaffa 548 Transfers.

69. Pursuant to 11 U.S.C. § 548, the Jaffa 548 Transfers constitute fraudulent transfers.

**WHEREFORE**, the Trustee demands the following relief against Jaffa:

    a. entry of judgment against Jaffa and in favor of the Trustee in the amount of $825,000;

    b. an award of attorneys' fees and costs;

    c. an award of pre-judgment and post-judgment interest; and

    d. such other and further relief as is just and appropriate.

4810-4031-1253, v. 1

## COUNT THREE
**(Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548)**
**(as to Nott)**

70. The Trustee repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth at length herein.

71. The Debtor made the Nott 548 Transfers to Nott within the two (2) years preceding the Petition Date in the total amount of approximately $1,366,526.84.

72. Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Nott 548 Transfers.

73. Upon information and belief, the Debtor was insolvent on the dates the Nott 548 Transfers were made to Nott or became insolvent as a result of the Nott 548 Transfers.

74. Pursuant to 11 U.S.C. § 548, the Nott 548 Transfers constitute fraudulent transfers.

**WHEREFORE**, the Trustee demands the following relief against Nott:

a. entry of judgment against Nott and in favor of the Trustee in the amount of $1,366,526.84;

b. an award of attorneys' fees and costs;

c. an award of pre-judgment and post-judgment interest; and

d. such other and further relief as is just and appropriate.

## COUNT FOUR
**(Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548)**
**(as to Crandell)**

75. The Trustee repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth at length herein.

76. The Debtor made the Crandell 548 Transfers to Crandell within the two (2) years preceding the Petition Date in the total amount of approximately $528,846.23.

11

77. Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Crandell 548 Transfers.

78. Upon information and belief, the Debtor was insolvent on the dates the Crandell 548 Transfers were made to Crandell or became insolvent as a result of the Crandell 548 Transfers.

79. Pursuant to 11 U.S.C. § 548, the Crandell 548 Transfers constitute fraudulent transfers.

**WHEREFORE**, the Trustee demands the following relief against Crandell:

a. entry of judgment against Crandell and in favor of the Trustee in the amount of $528,846.23;

b. an award of attorneys' fees and costs;

c. an award of pre-judgment and post-judgment interest; and

d. such other and further relief as is just and appropriate.

### COUNT FIVE
### (Avoidance of Fraudulent Transfers Pursuant to
### (11 U.S.C. § 544 and N.J.S.A. § 25:2-25(b), N.J.S.A. § 25:2-27)
### (as to Jaffa)

80. The Trustee repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth at length herein

81. Within four (4) years of the Petition Date, from and after January 1, 2016, the Debtor made the Jaffa 544 Transfers to Jaffa in the total amount of approximately $1,025,000.00.

82. Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Jaffa 544 Transfers, particularly since Jaffa considered himself to be a "passive investor."

83. Upon information and belief, the Debtor was insolvent on the dates the Jaffa 544 Transfers were made to Jaffa or became insolvent as a result of the Jaffa 544 Transfers.

12

**WHEREFORE**, the Trustee demands judgment against Jaffa as follows:

a. entry of judgment against Jaffa and in favor of the Trustee in the amount of $1,025,000.00;

b. an award of attorneys' fees and costs;

c. an award of pre-judgment and post-judgment interest; and

d. such other and further relief as is just and appropriate.

## COUNT SIX
### (Avoidance of Fraudulent Transfers Pursuant to
### (11 U.S.C. § 544 and N.J.S.A. § 25:2-25(b), N.J.S.A. § 25:2-27)
### (as to Nott)

84. The Trustee repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth at length herein.

85. Within four (4) years of the Petition Date, from and after January 1, 2016, the Debtor made the Nott 544 Transfers to Nott in the total amount of approximately $1,417,526.84.

86. Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Nott 544 Transfers, particularly since Nott paid extravagant personal expenses from the Debtor, in addition to her salary and other benefits.

87. Upon information and belief, the Debtor was insolvent on the dates the Nott 544 Transfers were made to Nott or became insolvent as a result of the Nott 544 Transfers.

**WHEREFORE**, the Trustee demands judgment against Nott as follows:

a. entry of judgment against Nott and in favor of the Trustee in the amount of $1,417,526.84;

b. an award of attorneys' fees and costs;

c. an award of pre-judgment and post-judgment interest; and

d. such other and further relief as is just and appropriate.

4810-4031-1253, v. 1

## COUNT SEVEN
### (Avoidance of Fraudulent Transfers Pursuant to
### (11 U.S.C. § 544 and N.J.S.A. § 25:2-25(b), N.J.S.A. § 25:2-27)
### (as to Crandell)

88. The Trustee repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth at length herein.

89. Within four (4) years of the Petition Date, from and after January 1, 2016, the Debtor made the Crandell 544 Transfers to Crandell in the total amount of approximately $820,240.86.

90. Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Crandell 544 Transfers, due, in part, to Crandell's personal issues which caused him to be terminated by the Debtor.

91. Upon information and belief, the Debtor was insolvent on the dates the Crandell 544 Transfers were made to Crandell or became insolvent as a result of the Crandell 544 Transfers.

**WHEREFORE**, the Trustee demands judgment against Crandell as follows:

   a. entry of judgment against Crandell and in favor of the Trustee in the amount of $820,240.86;

   b. an award of attorneys' fees and costs;

   c. an award of pre-judgment and post-judgment interest; and

   d. such other and further relief as is just and appropriate.

## COUNT EIGHT
### (Declaratory Judgment Regarding Post-Petition Agreement)

92. The Trustee repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth at length herein

93. The Debtor did not receive authority of the Bankruptcy Court to enter into the Post-Petition Agreement.

94. The Post-Petition Agreement was entered into by the Debtor and certain of the Defendants outside of the ordinary course of business.

95. As such, the Debtor did not have authority to release any of the parties, including but not limited to Nott and/or Crandell.

**WHEREFORE**, the Trustee demands judgment as follows:

a. declaring the Post-Petition Agreement is invalid and of no force or effect;

b. an award of attorneys' fees and costs;

c. an award of pre-judgment and post-judgment interest; and

d. such other and further relief as is just and appropriate.

### COUNT NINE
### (Breach of Fiduciary Duty)
### (as to Jaffa)

96. The Trustee repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth at length herein

97. Jaffa, as the sole owner of the Debtor, owed the Debtor a fiduciary duty to oversee business operations and financial affairs.

98. Jaffa authorized or otherwise ignored actions taken by Nott and Crandell, by way of transferring assets to various other insider companies, allowing the Nott Loan to remain outstanding, by paying personal debts from the Debtor, and allowing the Nott Transfers, Jaffa Transfers, Crandell Transfers and NFN Now Transfers, which left the Debtor insolvent or deepened its insolvency (collectively, the "Jaffa Duty Transfers").

99. The Debtor received nothing of value in exchange for this diversion of assets and, as a result, the Debtor suffered harm as a result of the Jaffa Duty Transfers.

100. In authorizing, ignoring or otherwise orchestrating the Jaffa Duty Transfers, Jaffa, as the sole owner of the Debtor, breached his fiduciary duty to the Debtor and its creditors.

**WHEREFORE,** the Trustee demands judgment against Jaffa as follows:

a. disgorging any salary or draw paid to Jaffa;

b. recovering the value of the Jaffa Duty Transfers from Jaffa;

c. awarding damages, including punitive damages, together with interest, costs of suit, and reasonable attorneys' fees; and

d. granting such other and further relief as the Court deems just and proper.

## COUNT TEN
### (Breach of Fiduciary Duty)
### (as to Nott)

101. The Trustee repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth at length herein

102. Nott was the Chief Executive Officer of the Debtor and made all business-related decisions regarding the Debtor.

103. Nott owed the Debtor a fiduciary duty to oversee business operations.

104. Nott authorized the actions taken by the Defendants, by way of transferring assets to various other insider companies, allowing the Nott Loan to remain outstanding and paying personal debts from the Debtor, and allowing the Nott Transfers, Jaffa Transfers, Crandell Transfers and NFN Now Transfers, which left the Debtor insolvent or deepened its insolvency (collectively, the "Nott Duty Transfers").

105. The Debtor received nothing of value in exchange for this diversion of assets and, as a result, the Debtor suffered harm as a result of the Nott Duty Transfers.

16

106. In authorizing and orchestrating the Nott Duty Transfers and otherwise diverting of the Debtor's assets, Nott, as the Chief Executive Officer of the Debtor, breached her fiduciary duty to the Debtor and its creditors.

**WHEREFORE,** the Trustee demands judgment against Nott as follows:

a. disgorging any salary paid to Nott;

b. recovering the value of the Nott Duty Transfers from Nott;

c. awarding damages, including punitive damages, together with interest, costs of suit, and reasonable attorneys' fees; and

d. granting such other and further relief as the Court deems just and proper.

### COUNT ELEVEN
### (Breach of Duty of Loyalty)
### (as to Nott)

107. The Trustee repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth at length herein.

108. Nott was the Chief Executive Officer of the Debtor and made all business-related decisions regarding the Debtor.

109. Nott authorized the Nott Duty Transfers.

110. The Debtor received nothing of value in exchange for this diversion of assets and, as a result, the Debtor suffered harm as a result of the Nott Duty Transfers.

111. In orchestrating these Nott Duty Transfers, Nott breached her duty of loyalty to the Debtor and its creditors.

**WHEREFORE**, the Trustee demands judgment against Nott as follows:

a. disgorging any salary paid to Nott;

b. recovering the value of the Nott Duty Transfers from Nott;

c. awarding damages, including punitive damages, together with interest, costs of suit, and reasonable attorneys' fees; and

d.  granting such other and further relief as the Court deems just and proper.

## COUNT TWELVE
## (Breach of Duty of Care)
### (as to Nott)

112. The Trustee repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth at length herein.

113. Nott was the Chief Executive Officer of the Debtor and made all business-related decisions regarding the Debtor.

114. Nott authorized the Nott Duty Transfers.

115. The Debtor received nothing of value in exchange for this diversion of assets and, as a result, the Debtor suffered harm as a result of the Nott Duty Transfers.

116. In orchestrating these Nott Duty Transfers, Nott breached her duty of care to the Debtor and its creditors.

**WHEREFORE**, the Trustee demands judgment against Nott as follows:

a.  disgorging any salary paid to Nott;

b.  recovering the value of the Nott Duty Transfers from Nott;

c.  awarding damages, including punitive damages, together with interest, costs of suit, and reasonable attorneys' fees; and

d.  granting such other and further relief as the Court deems just and proper.

## COUNT THIRTEEN
## (Waste of Entity Assets)
### (as to Jaffa)

117. The Trustee repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth at length herein.

118. Jaffa was the sole shareholder of the Debtor.

119. Jaffa authorized the Jaffa Duty Transfers.

120. The Debtor received nothing of value in exchange for this diversion of assets and, as a result, the Debtor suffered harm as a result of the Jaffa Duty Transfers.

121. The Jaffa Duty Transfers were a waste of entity assets.

**WHEREFORE**, the Trustee demands judgment against Jaffa as follows:

a. disgorging any salary or draw paid to Jaffa;

b. recovering the value of the Jaffa Duty Transfers from Jaffa;

c. awarding damages, including punitive damages, together with interest, costs of suit, and reasonable attorneys' fees; and

d. granting such other and further relief as the Court deems just and proper.

### COUNT FOURTEEN
### (Waste of Entity Assets)
### (as to Nott)

122. The Trustee repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth at length herein.

123. Nott was the Chief Executive Officer of the Debtor and made all business-related decisions regarding the Debtor.

124. Nott authorized the Nott Duty Transfers.

125. The Debtor received nothing of value in exchange for this diversion of assets and, as a result, the Debtor suffered harm.

126. The Nott Duty Transfers were a waste of entity assets.

**WHEREFORE**, the Trustee demands judgment against Nott as follows:

a. disgorging any salary paid to Nott;

b. recovering the value of the Nott Duty Transfers from Nott;

c. awarding damages, including punitive damages, together with interest, costs of suit, and reasonable attorneys' fees; and

    d. granting such other and further relief as the Court deems just and proper.

                                      **McMANIMON, SCOTLAND & BAUMANN, LLC**
                                      *Counsel to Plaintiff Andrea Dobin,*
                                      *Chapter 7 Trustee*

Dated: December 30, 2020                    By: */s/ Michele M. Dudas*
                                                MICHELE M. DUDAS

4853-0504-9143, v. 1

20