**McMANIMON, SCOTLAND**
**& BAUMANN, LLC**
427 Riverview Plaza
Trenton, New Jersey 08611
(609) 695-6070
Andrea Dobin (adobin@msbnj.com)
Michele M. Dudas (mdudas@msbnj.com)
*Counsel to Andrea Dobin, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL MANAGEMENT & PRESERVATION SERVICES, LLC, d/b/a NATIONAL FIELD NETWORK,<br><br>Debtor. | Case No. 18-16859 (CMG)<br><br>Chapter 7<br><br>**Hearing Date and Time:**<br>**November 24, 2026, at 10:00 a.m.** |

**CERTIFICATION OF ANDREA DOBIN, CHAPTER 7 TRUSTEE, IN SUPPORT OF MOTION APPROVING SETTLEMENT AND COMPROMISE WITH EMERSON COLLEGE PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 9019 AND FOR RELATED RELIEF**

I, **ANDREA DOBIN**, of full age, hereby certify and state as follows:

1. I am the duly appointed Chapter 7 Trustee for National Management & Preservation Services, LLC, d/b/a National Field Network, Chapter 7 debtor (the "**Debtor**"). As such, I am fully familiar with the facts set forth herein and submit this Certification in support of my Motion to approve the settlement and compromise reached with Emerson College ("**Emerson**") resolving any and all claims against Emerson in my role as a judgment creditor of Shari Nott ("**Nott**") pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019 (the "**Motion**").

2. The Debtor was in the business of providing default services, including property preservation services, to banks and other institutions.

3. Nott was hired by the Debtor in or about 2009, and eventually served as the Debtor's Chief Executive Officer.

4. Upon information and belief, in or about 2015, the Debtor began experiencing financial difficulties as a result of delayed payment from one of its primary vendors, large receivables from another primary vendor, and other financial obligations of the Debtor, including tax payments.

5. During the course of Nott's employment, the Debtor advanced Nott monies for lavish personal expenses. Each of the advances to Nott were documented in the Debtor's books and records as an accounts receivable due and owing from Nott which, as of the Petition Date (defined below), totaled $1,485,000 ("**Accounts Receivable**").

6. In addition to the mounting Accounts Receivable reflecting funds advanced to Nott, according to the Debtor's books and records from January 1, 2016 through the Petition Date, Nott received direct cash payments from the Debtor in excess of $1,400,000.

7. On April 6, 2018 (the "**Petition Date**"), an involuntary Chapter 7 petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq*.) in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Case**"). ECF 1.

8. On April 23, 2018, the Debtor filed a Motion to convert the Chapter 7 case to Chapter 11 (ECF13), which was granted by Order entered April 25, 2018 (ECF 15).

9. On or about July 20, 2018, a Creditors Committee ("**Committee**") was formed (ECF 64).

10. On January 28, 2019, the Office of the United States Trustee filed a Motion to convert the Chapter 11 case to Chapter 7 [ECF 109], which was granted by Order entered April 2, 2019. ECF 137.

11. On April 3, 2019, Bunce D. Atkinson, Esq. ("**Original Trustee**") was appointed to serve as the Chapter 7 Trustee. ECF 138 and 139.

12. On July 20, 2020, I was appointed as the successor Chapter 7 Trustee to the Original Trustee. ECF 178 and 179.

13. On December 30, 2020, I filed an Adversary Complaint against Jack Jaffa ("**Jaffa**"), Nott and Christopher Crandell ("**Crandell**"), seeking to recover property of the Estate, for avoidance of fraudulent transfers and for related relief ("**Complaint**"). ECF 1.

14. I actively litigated the Adversary Proceeding against Nott. During that time, I resolved the independent allegations against Crandell first, and then Jaffa.

15. After extensive delays requested by Nott, trial was eventually scheduled for July 12, 2023 ("**Trial Date**"). Prior to the start of the trial, the Court conducted a settlement conference, with Nott and her counsel present.

16. After lengthy negotiations, Nott agreed to settle the Adversary Proceeding by providing a Consent Judgment in the amount of $1,485,000, representing the amounts due on Accounts Receivable. A motion to approve the settlement was granted by Order entered December 12, 2023. [ECF 345].

17. The Consent Judgment was entered on the docket in the Bankruptcy Case on December 21, 2023 [ECF 348] and recorded as a statewide lien in the State of New Jersey on February 2, 2024 at DJ-13308-24 (the "**Consent Judgment**").

18. No portion of the Consent Judgment was voluntarily paid by Nott and in fact, she evaded voluntary payment, to the point where Nott was found in contempt ("**Order for Contempt**") [ECF 355] and I had to engage the assistance of the United States Marshal's Service to compel her compliance.

19. In late-July through early August 2024, Nott finally provided responses to the Information Subpoena. While awaiting her responses, I took action to uncover bank accounts for Nott, and my counsel served Subpoenas on the bank accounts where the Debtor did its banking, in the hopes that Nott also banked there since she was the signatory to the Debtor's accounts and in control of financial information.

20. In or about July 2024, I received bank statements from Nott's personal bank accounts at TD Bank and Santander Bank (the "**Bank Statements**").

21. A review of the Bank Statements revealed payments made by Nott to Emerson for tuition payments for her daughters, Rachel Oglensky and Sophie Oglensky, totaling $42,414.84 (collectively, the "**Transfers**").

22. On July 31, 2024, as a judgment creditor of Nott, I filed a Complaint against Emerson in the Superior Court of New Jersey, Law Division, Mercer County at MER-L-1482-24, seeking to recover the Transfers as fraudulent transfers pursuant to N.J.S.A. § 25:2-25(a)(1) (the "**Original Lawsuit**"). Emerson asserted certain defenses to the Original Lawsuit.

23. Nott died in a single car accident on October 16, 2024.

24. On March 11, 2025, the Original Lawsuit was dismissed without prejudice for reasons unrelated to the merits of the Original Lawsuit.

25. On March 6, 2026, I filed a new lawsuit against Emerson at Docket No. MER-L-520-26 ("**Second Lawsuit**"). Emerson asserted certain defenses to the Second Lawsuit.

26. Upon information and belief, no decedent estate has been established for Nott either in New Jersey or in Michigan, where she resided prior to her death.

27. On or about October 5, 2026, I reached a settlement with Emerson where it would pay $17,500 and the exchange of mutual releases (the "**Settlement**") in complete satisfaction of the Transfers and any allegations contained in the Original Lawsuit or Second Lawsuit. On October 19, 2026, I entered into the Settlement Agreement and Release with Emerson, which is annexed as **Exhibit "A."**

28. In my business judgment, I believe the settlement is fair and will result in the most favorable and expeditious outcome for this Estate given that Nott is now deceased and, upon information and belief, no decedent estate for Nott exists or is expected to be established.

29. Therefore, I request that the Motion be approved in its entirety.

I hereby certify that the foregoing statements made by me are true. If any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Andrea Dobin*
ANDREA DOBIN

Dated: October 26, 2026

# EXHIBIT A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is entered into as of this 19th day of October, 2026, by and between Andrea Dobin, Chapter 7 Trustee ("Trustee") for National Management & Preservation Services, LLC, d/b/a National Field Network, Chapter 7 debtor ("Debtor"), on the one hand, and Emerson College ("Emerson"), on the other hand. Where appropriate, the Trustee and Emerson may be referred to herein as the "Parties." This Agreement is based on the following facts:

## RECITALS

**WHEREAS**, Shari Nott ("Nott") was the Debtor's Chief Executive officer; and

**WHEREAS**, during the course of Nott's employment, the Debtor advanced Nott monies for personal expenses. The advances to Nott were documented in the Debtor's books and records as an accounts receivable due and owing from Nott to the Debtor and, as of the Petition Date (defined below), totaled $1,485,000 ("Accounts Receivable"). According to the Debtor's books and records, between January 1, 2016 through the Petition Date (defined below), there were other direct cash payments to Nott in excess of $1,400,000; and

**WHEREAS**, on April 6, 2018 (the "Petition Date"), an involuntary Chapter 7 petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) in the United States Bankruptcy Court for the District of New Jersey; and

**WHEREAS**, on April 23, 2018, the Debtor filed a Motion to convert the Chapter 7 case to Chapter 11, which was granted by Order entered April 25, 2018; and

**WHEREAS**, on or about July 20, 2018, a Creditors Committee ("Committee") was formed; and

**WHEREAS**, on January 28, 2019, the Office of the United States Trustee filed a Motion to convert the Chapter 11 case to Chapter 7, which was granted by Order entered April 2, 2019; and

**WHEREAS**, on April 3, 2019, Bunce D. Atkinson, Esq. ("Original Trustee") was appointed to serve as the Chapter 7 Trustee. On July 20, 2020, the Trustee was appointed as the successor Chapter 7 Trustee to the Original Trustee; and

**WHEREAS**, on December 30, 2020, the Trustee filed an Adversary Complaint against Nott and others, seeking to recover property of the Estate, for avoidance of fraudulent transfers and for related relief at Adv. Pro. No. 20-1648 (CMG) ("Nott Adversary Proceeding"); and

**WHEREAS**, on July 12, 2023, Nott agreed to settle the Nott Adversary Proceeding by providing a Consent Judgment in the amount of $1,485,000, representing the amounts due on Accounts Receivable being pursued by the Trustee; and

**WHEREAS**, the Consent Judgment was entered on the docket on December 21, 2023 and recorded as a statewide lien in the State of New Jersey on February 2, 2024 at DJ-13308-24 (the "Consent Judgment"); and

**WHEREAS**, no portion of the Consent Judgment was voluntarily paid by Nott and the Trustee alleged that Nott evaded voluntary payment of the Trustee's collection efforts; and

**WHEREAS**, the Trustee discovered that Nott's daughters, Rachel Oglensky and Sophie Oglensky (where appropriate, collectively, the "Daughters"), were students at Emerson; and

**WHEREAS**, Nott allegedly made the following payments to Emerson on behalf of the Daughters:

| **Date of Payment** | **Amount** |
|---|---|
| July 29, 2019 | $50.00 |
| August 5, 2019 | $7,653.75 |
| September 3, 2019 | $7,653.75 |
| September 30, 2019 | $105.00 |
| October 31, 2019 | $7,653.75 |
| December 13, 2019 | $50.00 |
| December 13, 2019 | $7,663.75 |
| December 19, 2019 | $5,814.80 |
| June 23, 2020 | $5,770.04 |
| **Total:** | **$42,414.84** |

collectively, the **"Transfers"**; and

**WHEREAS**, on July 31, 2024, the Trustee, as a judgment creditor of Nott, filed a Complaint against Emerson in the Superior Court of New Jersey, Law Division, Mercer County at MER-L-1482-24, seeking to recover the Transfers as fraudulent transfers pursuant to N.J.S.A. § 25:2-25(a)(1) (the "Original Lawsuit"). Emerson asserted certain defenses to the Original Lawsuit; and

**WHEREAS**, on March 11, 2025, the Original Lawsuit was dismissed without prejudice for reasons unrelated to the merits of the Original Lawsuit; and

**WHEREAS**, on March 6, 2026, the Trustee filed a new lawsuit against Emerson at Docket No. MER-L-520-26 ("Second Lawsuit"). Emerson asserted certain defenses to the Second Lawsuit; and

**WHEREAS**, on or about October 5, 2026, the Parties reached a resolution as memorialized in the within Agreement, including payment by Emerson to the Trustee in the amount of $17,500 ("Settlement Amount") and the exchange of mutual releases (the "Settlement"); and

**WHEREAS**, the Trustee believes that Settlement is in the best interest of the Debtor's estate, and its creditors; and

**WHEREAS**, upon execution of the Agreement, the Trustee will file a Notice of Settlement ("Notice") and Motion pursuant to Fed. R. Bankr. P. 9019 ("Motion") to obtain approval of this Agreement; and

**WHEREAS**, the effective date ("Effective Date") of this Settlement will be: (a) upon the (i) issuance of a Certification of No Objection to the Notice, and (ii) entry of an Order approving the Motion; and (b) receipt by the Trustee and clearance of the Settlement Amount (collectively, the "Contingencies"). If the Contingencies cannot be met, then the Parties reserve all claims, rights and remedies; and

**WHEREAS**, the Parties now seek to settle, compromise and resolve their disputes and other issues among them on the terms set forth herein;

**NOW THEREFORE**, in consideration of the foregoing recitals, and which are incorporated into and made an integral part of this Agreement, and the terms and conditions hereinafter set forth, the Parties hereby agree as follows:

## AGREEMENT

1. Recitals Incorporated. The foregoing recital paragraphs are incorporated herein by reference and agreed to by the Parties as if fully set forth at length.

2. Settlement Terms. The Parties agree to settle any and all claims upon the Trustee's receipt of payment in the amount of **SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS AND 00/100 CENTS (US $17,500.00)** by check made payable to "Andrea Dobin, Chapter 7 Trustee," and mailed to c/o McManimon, Scotland & Baumann, LLC, 427 Riverview Plaza, Trenton, New Jersey 08611 within thirty (30) days of obtaining Bankruptcy Court approval. Within five (5) business days of satisfaction of all Contingencies, the Trustee will dismiss the Second Lawsuit with prejudice.

3. Release. This Release is hereby entered into by and between the undersigned Parties in full and final satisfaction and discharge of any and all claims against the other.

Upon the Effective Date, Emerson hereby withdraws, dismisses, releases, waives, and forever discharges with prejudice any claim of any type whatsoever, asserted or unasserted, whether filed before or after the date hereof, and any other claim or cause of action of any type or nature, whether known or unknown, suspected or unsuspected, against the Debtor's bankruptcy estate, the Trustee, and her professionals.

Upon the satisfaction of the Contingencies, including payment of the Settlement Amount in full, the Trustee hereby withdraws, dismisses, releases, waives, and forever discharges with prejudice any claim of any type whatsoever, asserted or unasserted, whether filed before or after the date hereof, and any other claim or cause of action of any type or nature, whether known or unknown, suspected or unsuspected, against Emerson, and any and all affiliates, insurers,

indemnitors, successors and assigns, together with all of their present and former directors, officers, agents, attorneys, and employees and their heirs, personal representatives, successors and assigns.

The undersigned parties hereby represent and warrant that, prior to signing this Mutual Release, they had a full opportunity to consider its terms and discuss them with counsel. The undersigned parties further represent and warrant that they fully understand the meaning and effect of this Mutual Release and have voluntarily executed it. Each of the Parties warrants that it is the sole and current owner of the claims released by this Agreement and that it is authorized to enter into this Agreement. Each individual signing this Agreement on behalf of any Party represents and warrants that he/she has full authority to do so. Each Party agrees to indemnify the other from any loss or expense (including, without limitation, attorneys' fees) that may be incurred as a result of any breach of this warranty.

4. No Admission of Liability. The Parties understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission of guilt, wrongdoing, or noncompliance with federal, state or local law, statute, order or regulation, tortious act, breach of contract, or violation of common law, or any other wrongdoing whatsoever.

5. Entire Agreement. This Agreement constitutes the entire agreement with respect to the subject matter addressed herein and supersedes any prior written and/or verbal agreements between the Parties.

6. Execution of Agreement. This Agreement may be executed in one or more counterparts, any of which need not contain the signatures of more than one Party, but all such counterparts taken together shall constitute one and the same agreement. Facsimile and/or scanned signatures shall be deemed to have the full force and effect of ink signatures.

7. Drafting of Agreement. This Agreement was drafted by all the Parties and therefore the rule of law that stands for the proposition that ambiguities contained within an agreement are to be construed against the drafter thereof is inapplicable.

8. Jurisdiction. The Bankruptcy Court for the District of New Jersey will retain jurisdiction over the terms and conditions of this Agreement, and any and all disputes, claims or actions based upon this Agreement will be heard exclusively by the Bankruptcy Court in the District of New Jersey.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, as of the date first above written.

**EMERSON COLLEGE**

Dated: October 19, 2026

By: ______________________
Name: Richard Medonna
Title: VP Finance & CFO

**ANDREA DOBIN, not personally or individually but solely as Chapter 7 Trustee for National Preservation Services LLC, d/b/a National Field Network**

Dated: October 19, 2026

By: ______________________
ANDREA DOBIN, Chapter 7 Trustee



ME1\63351470.v1