**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL MANAGEMENT & PRESERVATION SERVICES, LLC, d/b/a NATIONAL FIELD NETWORK,<br><br>Debtor. | Case No. 18-16859 (CMG)<br><br>Chapter 7<br><br>Honorable Christine M. Gravelle, Chief U.S.B.J.<br><br>**Hearing Date and Time:**<br>**November 24, 2026, at 10:00 a.m.** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ANDREA DOBIN, CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER APPROVING SETTLEMENT AND COMPROMISE WITH EMERSON COLLEGE PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 9019, AND FOR RELATED RELIEF**

Of Counsel and On the Brief:
Andrea Dobin
Michele Dudas, Esq.

**McMANIMON, SCOTLAND**
**& BAUMANN, LLC**
427 Riverview Plaza
Trenton, New Jersey 08611
(609) 695-6070
Andrea Dobin (adobin@msbnj.com)
Michele M. Dudas (mdudas@msbnj.com)
*Counsel to Andrea Dobin,*
*Chapter 7 Trustee*

## PRELIMINARY STATEMENT

Andrea Dobin, Chapter 7 Trustee ("**Trustee**") for National Management & Preservation Services d/b/a National Field Network, Chapter 7 debtor ("**Debtor**") respectfully submits this Memorandum of Law in support of her Motion approving the settlement and compromise reached with Emerson College ("**Emerson**"), in complete satisfaction of any and all claims of the Trustee, as a judgment creditor of Shari Nott ("**Nott**"), against Emerson relating to alleged fraudulent transfers by Nott to Emerson in the collective amount of $42,414.84 ("**Transfers**") pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019, and for related relief (the "**Motion**").

The settlement provides that Emerson will pay the Estate $17,500 in complete satisfaction of the Transfers ("**Settlement**"). The claims against Emerson relate to the Trustee's pursuit of recovery on the Consent Judgment obtained against Nott in the amount of $1,485,000 in connection with Adv. Pro. No. 20-1648 (CMG), no portion of which was voluntarily paid by Nott. The Trustee discovered the Transfers to Emerson upon receipt and review of Nott's personal bank statements and relate to college tuition payments by Nott to Emerson for Nott's daughters. Nott is now deceased and upon information, no decent estate exists. The Settlement does not in any way waive any right or remedies in connection with collection of further amounts due against other third parties as a judgment creditor of Nott. Given the defenses asserted by Emerson, and the time and expense associated with potential litigation, the Trustee has determined in her business judgment that the Settlement is in the best interests of creditors and this Estate.

## STATEMENT OF FACTS

For the sake of brevity, the Trustee incorporates the facts from her Certification filed in support of the within Motion, and refers to pleadings on file in this Chapter 7 case.

## LEGAL ARGUMENT

By this Motion, the Trustee seeks entry of an order approving the proposed Settlement pursuant to Bankruptcy Rule 9019.

### A. The Settlement Is Fair and Equitable to and Is in the Best Interests of the Debtor's Estate and Creditors.

Bankruptcy law favors settlement of disputes. See, e.g., Will v. Nw. Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006); see also Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) ("[I]n administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts."); Tindall v. Mavrode (In re Mavrode), 205 B.R. 716, 719–20 (Bankr. D.N.J. 1997) (noting that the Third Circuit favors settlement in bankruptcy cases).

Thus, under Bankruptcy Rule 9019(a), upon motion and after notice and a hearing, a bankruptcy court may approve a compromise or settlement. In determining whether to approve a settlement, a bankruptcy court should consider four criteria: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of litigation involved and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors. Martin v. Myers (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

In making its determination, a court must not substitute its judgment for that of the Trustee. Indeed, under normal circumstances, the court should defer to the Trustee's judgment so long as legitimate business justification for the judgment exists. Moreover, the settlement need not qualify as the best possible compromise. Instead, the court need find only that the settlement is fair, reasonable, and in the best interest of the estate. Next, the court should not decide questions of law and fact raised by any objections. Rather, the court should only canvass

the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. Martin, 91 F.3d at 393.

Applying this standard, bankruptcy courts in this District routinely approve settlements in bankruptcy cases. See, e.g., In re Grand Prix Assocs. Inc., 2009 WL 1850966 at **6-8 (Bankr. D.N.J. June 26, 2009) (approving settlement because, among other reasons, litigation was certain to be extremely costly and time consuming and parties could not demonstrate whether there would be sufficient monetary collection that would benefit estate); In re McDermott, 2008 WL 877964 at *6 (granting chapter 7 trustee's motion to approve settlement of debtors' state court action asserting fraud, mismanagement, and other claims, where trustee had undertaken extensive due diligence when she evaluated probability of success; trial issues were complex; there was no guarantee of favorable outcome on merit; administration costs would likely consume any potential recovery by unsecured creditors unless recovery was well in excess of $1 million; and serious issues as to collectability of any money judgment existed because defendants resided in Florida); In re NJ Affordable Homes Corp., 2007 WL 4300153 at **3-4 (Bankr. D.N.J. Dec. 5, 2007) (approving chapter 7 trustee's settlement providing for transfer of certain real properties to title insurance company, where proposed settlement would net for estate $20,000.00 per property, and thus, $900,000.00 for forty-five properties; such recovery represented significant consideration in exchange for release of claims which might eventually have no value, given lack of equity remaining in properties; such recovery was far more beneficial than possibility of zero recovery plus accumulation of significant professional fees in litigation; management of properties had ceased; and real estate market had deteriorated); In re NJ Affordable Homes Corp., 2007 WL 3166950 at **8-11 (Bankr. D.N.J. Oct. 22, 2007) (approving chapter 7 trustee's settlement whereby chapter 7 trustee would pursuant to certain

procedures enter into consent judgments with Ponzi scheme investors, where litigation was complex and expensive, continuing litigation would require extensive discovery with large number of defendants, collection efforts against defendants would likely be fruitless, and requiring defendants to litigate, rather than cut their losses, would be punitive and unfair); In re NJ Affordable Homes Corp., 2007 WL 2713046 at **8-10 (Bankr. D.N.J. Sept. 13, 2007) (approving chapter 7 trustee's settlement providing for transfer of certain real properties to certain institutional lenders, where adversary proceedings at issue were complex and litigious, litigation expenses were enormous, settlement would neither affect nor prejudice rights of competing mortgage holders in properties, individual investors in case sought finality, and settlement was designed to minimize claims against estate).

In the present case, four (4) Martin factors are addressed or have been satisfied. The first factor has been satisfied because, while the Trustee pursued recovery of the Transfers in good faith, the defenses asserted by Emerson and the costs associated with continued litigation to recover fraudulent transfers under New Jersey Statute, does come with risks given the delays intentionally caused by Nott. The second Martin factor, the likely difficult in collection, is also present, as Emerson is an out-of-state educational institution. Even if the Trustee were successful in obtaining judgment, she would still need to domesticate the judgment to enforce any involuntary collection efforts. The additional time, expense and inconvenience of proceeding to trial for an eventual judgment addresses the third factor. Finally, the Settlement is in the best interests of creditors, so that the Estate does not incur unnecessary administrative fees in prosecuting recovery of the Transfers. The Settlement will provide for additional funds to be added to the funds of the Estate on hand for an eventual distribution to unsecured creditors,

after administrative creditors are paid in full. Accordingly, the Trustee submits the Settlement is fair and equitable and falls within the range of reasonableness.

The relief requested by the Trustee in the Motion is also consistent with this Court's equitable powers pursuant to Section 105(a) of the Bankruptcy Code. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). As one court acknowledged, Section 105 of the Bankruptcy Code confers broad powers on bankruptcy courts:

> [Section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of [section] 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of its jurisdiction . . . .

Davis v. Davis (In re Davis), 170 F.3d 475, 492 (5th Cir. 1999) (internal citations and quotations omitted); see also In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3rd Cir. 2006). Under Section 105(a) of the Bankruptcy Code, this Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of the debtor's assets. See Coie v. Sadkin (In re Sadkin), 36 F.3d 473, 478 (5th Cir. 1994). The facts of this case further Section 105's purpose. The terms and conditions were negotiated at length prior to reaching the Settlement. The Trustee recognizes that her ability to collect any additional monies may be speculative given that Nott is now deceased. Regardless of the Trustee's intended course of action, she has determined that the Settlement with Emerson is in the Estate's best interests.

The Trustee respectfully submits that the Settlement satisfies the applicable legal standards, is fair, equitable and reasonable, and should be approved by this Court. Therefore, the proposed Settlement not only surpasses the minimum threshold of reasonableness necessary

to warrant approval, it in fact produces the best economic result possible for the Debtor's estate and creditors under the circumstances of this case.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests the entry of an Order approving the parties' Settlement, and granting such other and further relief as the Court deems just and equitable.

**McMANIMON, SCOTLAND**
**& BAUMANN, LLC**
*Counsel to Andrea Dobin,*
*Chapter 7 Trustee*

Dated: October 26, 2026

By: /s/ Michele M. Dudas
MICHELE M. DUDAS